## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| JINKOSOLAR (U.S.) INC. and JINKO SOLAR (U.S.) INDUSTRIES INC. )<br><br>Plaintiffs, )<br><br>v. )<br><br>UNITED STATES, UNITED STATES CUSTOMS AND BORDER, PROTECTION, and CHRIS MAGNUS, in his Official Capacity as Commissioner of United States Customs and Border Protection )<br><br>Defendants. ) | Court No.: 22-00241 |

### COMPLAINT

1.      Plaintiffs JinkoSolar (U.S.) Inc. and Jinko Solar (U.S.) Industries Inc. (together, "Jinko" or "Plaintiffs"), by and through their attorneys, bring this action to challenge Presidential Proclamation 10101 of October 10, 2020, which imposes additional safeguard duties on crystalline silicone photovoltaic ("CSPV") cells pursuant to Section 201 of the Trade Act of 1974. Proclamation No. 10101, *To Further Facilitate Positive Adjustment to Competition From Imports of Certain Crystalline Silicon Photovoltaic Cells (Whether or Not Partially or Fully Assembled Into Other Products)*, 85 Fed. Reg. 65,639 (Oct. 16, 2020) ("Modification Proclamation").  The CSPV safeguard measures affect both CSPV solar panels and bifacial solar panels imported into the United States, which are essential to U.S. solar energy. Plaintiffs import both products into the United States.

2.      The Modification Proclamation reflects attempts by the Trump Administration to increase Section 201 safeguard duties on imported CSPV solar panels and bifacial solar panels.

The Trump Administration twice previously sought to withdraw the exclusion of bifacial solar panels from the CSPV safeguard measure.  Both of those attempts were enjoined because the Trump Administration had failed to abide by the requirements of the Administrative Procedure Act or offer a reasoned basis for withdrawing the exclusion.

3.      While the prior attempts to withdraw the bifacial panel exclusion remained enjoined, President Trump issued the Modification Proclamation, which again withdrew the exclusion for bifacial solar panels.  President Trump further asserted that the exclusion that the Administration had granted for bifacial solar panels had impaired the remedial effect of the CSPV safeguard measure.  The Trump Administration then relied on that finding to justify an increase in the tariff rate for all CSPV products in the fourth year of the CSPV safeguard measure, from 15% to 18%.

4.      The Modification Proclamation is unlawful.  In issuing the Modification Proclamation, President Trump relied on a statutory provision that was intended to be used to liberalize trade when the protections of the original safeguard measure are no longer necessary. Instead, he used this provision to increase restrictions on trade. Moreover, the Trump Administration failed to make the findings that the statute requires before a safeguard measure can be modified pursuant to the provision he invoked. In this respect, the Modification Proclamation is similar to the prior attempts to withdraw the bifacial panel exclusion, as the Trump Administration has failed to follow the required procedures and to make the necessary to make the necessary findings before acting.

5.      Plaintiffs suffered significant financial losses from the tariffs imposed by Defendants under the Modification Proclamation. Specifically, Plaintiffs paid tens of millions of

dollars in customs duties on imported CSPV solar panels and bifacial solar panels, which are essential to the deployment of clean, solar energy in the United States.

6. In *Solar Energy Industries Ass'n v. United States* ("*SEIA*"), 553 F. Supp. 3d 1322 (Ct. Int'l Trade 2021), *appeal docketed*, No. 22-1392 (Fed. Cir. Jan. 24, 2022), this Court determined that the Modification Proclamation is unlawful and set aside the Modification Proclamation as "null and void." *Id.* In its opinion, this Court held that (1) the increase in duties on CSPV solar panels from 15% to 18%; and (2) the revocation of a tariff exclusion applicable to bifacial solar panels imposed pursuant to Modification Proclamation were a "clear misconstruction of the governing statute resulting in action[s] outside delegated authority." *Id.* at 1340 (internal citations omitted). Consequently, on December 7, 2021, this Court enjoined the enforcement of the Modification Proclamation and suspended further liquidation of affected entries. On February 4, 2022, President Biden issued Proclamation 10339 which effectively reversed both the increase in duties, and the revocation of the exclusion. Proclamation No. 10339, *To Continue Facilitating Positive Adjustment to Competition From Imports of Certain Crystalline Silicon Photovoltaic Cells (Whether or Not Partially or Fully Assembled Into Other Products)*, 87 Fed. Reg.7357 (Feb. 9, 2022) (the "2022 Modification Proclamation").

7. On November 16, 2021, in *SEIA*, this Court agreed that both the withdrawal of the exclusion of bifacial solar panels and increase of the safeguard tariffs on all CSPV panels was a clear misconstruction of the statute, reasoning that the statute "must be read to authorize only trade-liberalizing modifications to safeguard measures, because interpreting the statute to permit trade-restricting modifications would undermine the broader statutory scheme." *SEIA*, 553 F. Supp. 3d at 1342. This Court's holding consequently reverted the duty rate of the Section 201 safeguard tariff for solar cells (over quota only) and modules for the fourth year of the safeguard measure

from 18 percent back to 15 percent, and reinstated the exclusion of bifacial solar panels from the Section 201 safeguard tariff. *See generally* 85 Fed. Reg. 65,639; U.S. Customs and Border Protection, *CSMS #50525157 - Guidance: Suspension of Liquidation in Pending Section 201 Litigation*, CIT No. 20-03941, https://content.govdelivery.com/accounts/USDHSCBP/bulletins/302f3e5 (Dec. 28, 2021).

8.      On December 28, 2021, U.S. Customs and Border Protection ("CBP") issued guidance on the court's decision in *SEIA*. *See CSMS #50525157 - Guidance: Suspension of Liquidation in Pending Section 201 Litigation*   As ordered by this Court, CBP suspended "liquidation of all entries . . . entered under HTS 9903.45.22 and 9903.45.25 entered between February 7, 2021 and February 6, 2022" and suspended liquidation where it identified "any entries of bifacial solar panels entered between October 25, 2020 and February 6, 2022, under HTS 9903.45.25 or any other HTS classification." *Id*.

9.      On February 4, 2022, President Biden issued Proclamation 10339, which reduced the duties on CSPV modules to 15% and reinstated the exclusion on bifacial solar panels. Proclamation No. 10339, 87 Fed. Reg. at 7358..

## THE PARTIES

10.      Plaintiff Jinko Solar (U.S.) Industries Inc. ("Jinko Solar Industries") is a U.S. solar panel manufacturing company. Jinko Solar Industries imports CSPV cells that are assembled into solar panels at its manufacturing facility in Jacksonville, Florida.

11.      Plaintiff JinkoSolar (U.S.) Inc. imports, markets, and sells CSPV panels destined for U.S. solar energy development projects.

12.      Defendant United States is the federal government of the United States.

13.     Defendant United States Customs and Border Protection is an executive agency of the U.S. Government and a component of the Department of Homeland Security. It is headquartered at 1300 Pennsylvania Avenue, N.W., Washington, D.C. 20229.

14.     Defendant Chris Magnus is the Commissioner of CBP. He is sued in his official capacity.

## JURISDICTION

15.     This Court has jurisdiction pursuant to 28 U.S.C. § 1581(i)(1)(B)-(D), which provides that "the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue," and "administration and enforcement with respect to the matters referred to in paragraphs (A) through (C) of this subsection and subsections (a)-(h) of this section." 28 U.S.C. § 1581(i)(1)(B), (D).

16.     The tariff rate quota on CSPV solar cells and the additional tariff imposed on solar panels, including those ordered to be re-imposed on bifacial solar panels, were imposed pursuant to Section 201 of the Trade Act of 1974. Chapter 1 of title II of the Trade Act of 1974, which includes Section 201, is a law "providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue" and "quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety." This action thus arises out of a law described in 28 U.S.C. § 1581(i)(1)(B) and (C).

17.     Plaintiffs seek a declaration that the Modification Proclamation is unlawful and a refund for tariffs previously paid and interest thereon. Plaintiffs' claims also arise out of the

"administration and enforcement with respect to matters referred to in subparagraphs (A) through (C)" of 28 U.S.C. § 1581(i)(1), and the Court therefore has jurisdiction under 28 U.S.C. § 1581(i)(1)(D).

## STANDING

18.     Plaintiffs have standing pursuant to 28 U.S.C. § 2631(i), which states that "[a]ny civil action of which the Court of International Trade has jurisdiction, other than an action specified in subsections (a)-(h) of this section, may be commenced in the Court by any person adversely affected or aggrieved by agency action within the meaning of section 702 of title 5," which in turn states that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

19.     As parties adversely affected or aggrieved by the increase in safeguard duties stemming from the Modification Proclamation, Plaintiffs have standing to challenge the Proclamation and resulting duties.

20.     As the importer of record of articles affected by the Modification Proclamation, Plaintiffs are responsible for the payment of the unlawful duties to CBP on certain CSVP panels. Thus, Plaintiffs have suffered actual and particularized injury that was the direct result of Defendants' unlawful action.

## TIMELINESS OF THIS ACTION

21.     An action under 28 U.S.C. § 1581(i) must be commenced within two years after the cause of action first accrues.  28 U.S.C. § 2636(i).

22.     The Modification Proclamation was published in the Federal Register on October 16, 2020.  Plaintiffs' claims accrued, at the earliest, on the date that the Modification Proclamation published in the Federal Register.  Plaintiffs have therefore timely filed this action.

## HISTORY REGARDING THE CHALLENGED CONDUCT

### *Issuance of the Solar Safeguard Measure*

23.     On May 23, 2017, the U.S. International Trade Commission ("ITC") initiated a "safeguard" investigation under Chapter 1 of title II of the Trade Act of 1974, 19 U.S.C. §§ 2251, *et seq.*, of CSPV cells (whether or not partially assembled into other products).  *See Crystalline Silicon Photovoltaic Cells' (Whether or Not Partially or Fully Assembled Into Other Products); Institution and Scheduling of Safeguard Investigation and Determination That the Investigation Is Extraordinarily Complicated*, 82 Fed. Reg. 25,331 (June 1, 2017).  CSPV cells are products that convert the sun's energy into electricity. CSPV panels are collections of CSPV solar cells.

24.     On November 13, 2017, the ITC transmitted to President Trump a report on its investigation, finding that certain CSPV panels were "being imported into the United States in such increased quantities as to be a substantial cause of serious injury, or threat of serious injury, to the domestic industry producing a like or directly competitive article."  *See* Proclamation No. 9693, *To Facilitate Positive Adjustment to Competition From Imports of Certain Crystalline Silicon Photovoltaic Cells (Whether or Not Partially or Fully Assembled Into Other Products) and for Other Purposes*, 83 Fed. Reg. 3541, 3541 (Jan. 25, 2018).  The ITC submitted a supplemental report on December 27, 2017, identifying "unforeseen developments that led to the importation of CSPV panels into the United States in such increased quantities as to be a substantial cause of serious injury." *Id.*

25.     Following receipt of the ITC reports and the Commissioners' recommendations regarding the appropriate actions to address the serious injury to the domestic industry, President Trump issued Proclamation 9693 on January 23, 2018, imposing a safeguard measure of a type described in Section 203(a)(3) of the Trade Act with regard to certain CSPV panels.  *See id.* at 3541-51.  As relevant to this case, President Trump imposed a tariff rate quota on CSPV cells and an additional duty on CSPV panels at the following rates:

> If entered during the period from
> February 7, 2018 through February 6, 2019 . . . . . . . .  30%
>
> If entered during the period from
> February 7, 2019 through February 6, 2020 . . . . . . . .  25%
>
> If entered during the period from
> February 7, 2020 through February 6, 2021 . . . . . . . .  20%
>
> If entered during the period from
> February 7, 2021 through February 6, 2022 . . . . . . . .  15%

*Id.* at 3548, 3549.

### *Exclusion of Bifacial CSPV Panels*

26.     Presidential Proclamation 9693 also provided that "[w]ithin 30 days after the date of this proclamation, the USTR [United States Trade Representative] shall publish in the *Federal Register* procedures for requests for exclusion of a particular product from the safeguard measure established in this proclamation.  If the USTR determines, after consultation with the Secretaries of Commerce and Energy, that a particular product should be excluded, the USTR is authorized, upon publishing a notice of such determination in the *Federal Register*, to modify the HTS provisions created by Annex I to this proclamation to exclude such particular product from the safeguard measure . . . ."  *Id.* at 3543-44.

27.     On February 14, 2018, USTR published a notice setting out the procedures to request a product exclusion and opened a public docket on the Federal eRulemaking Portal, http://www.regulations.gov, for the submission of exclusion requests and comments regarding submitted requests. *See Procedures To Consider Additional Requests for Exclusion of Particular Products From the Solar Products Safeguard Measure*, 83 Fed. Reg. 6670 (Feb. 14, 2018). USTR's notice did not restrict who could request an exclusion. *See id.* USTR required exclusion requests to be received by March 16, 2018 and any responsive comments to be received by April 16, 2018. *See id.* at 6670, 6672. USTR stated that it would "evaluate each request on a case-by-case basis" and "grant only those exclusions that do not undermine the objectives of the safeguard measures." *Id.* at 6671. The notice establishing the exclusion process did not include any reference to the possibility that a granted exclusion could be modified or withdrawn at a later date.

28.     Several interested parties timely filed exclusion requests with USTR or commented on exclusion requests for bifacial panels and bifacial solar cells filed with USTR, which are products that absorb light and generate electricity on each side of the panel or cell. *See Exclusion of Particular Products From the Solar Products Safeguard Measure*, 84 Fed. Reg. 27,684, 27,684 (June 13, 2019).

29.     Because light is absorbed and electricity is generated from each side of a bifacial solar panel, bifacial panels increase total energy production. A single bifacial panel increases energy output between 5% and 20%, which means that for the same project, using monofacial panels would require more panels, more racking, more land, and more foundation to achieve the same energy output.

30.     On June 13, 2019, USTR published a notice in the Federal Register granting an exclusion from the safeguards action for "bifacial solar panels that absorb light and generate

electricity on each side of the panel and that consist of only bifacial solar cells that absorb light and generate electricity on each side of the cells." *Id*. at 27,685.  In granting the exclusion, USTR stated that it had evaluated the factors laid out in the February 14, 2018 notice, including the requirement that the exclusion not undermine the objectives of the safeguard measures. *See id.* at 27,684.  USTR's notice did not contain any indication that the granted exclusion might be revisited, modified, or withdrawn in the future.

31.     Solar projects take years to develop and coordination is required at multiple levels. Project success depends on all elements of the project—including the supply and pricing of equipment, obtaining requisite permits, project financing, timely construction, interconnection to the electric grid, and entering into power purchase agreements with utility customers—coming together at the right time.  Because solar panels are the primary components of a solar project, any variation in their price or an inability to timely procure panels will drastically impact the viability of the solar project and may threaten the project altogether.

### *USTR's Attempts to Withdraw the Bifacial CSPV Panel Exclusion and Resulting Litigation*

32.     On October 9, 2019, USTR published a notice in the Federal Register that the exclusion for bifacial solar panels would be withdrawn, effective October 28, 2019, meaning that imported bifacial CSPV panels would again be subject to the CSPV safeguard action. *See Withdrawal of Bifacial Solar Panels Exclusion to the Solar Products Safeguard Measure*, 84 Fed. Reg. 54,244 (Oct. 9, 2019).  The withdrawal of the bifacial panel exclusion was not subject to any formal notice and comment.

33.     In response, Invenergy Renewables, LLC instituted an action in the U.S. Court of International Trade challenging the withdrawal of the bifacial panel exclusion by filing a summons,

complaint, and motion for a temporary restraining order.  *See Invenergy Renewables, LLC v. United States*, Court No. 19-00192 (Ct. Int'l Trade filed Oct. 21, 2019).

34.     On November 7, 2019, this Court issued a temporary restraining order preventing USTR's initial withdrawal of the bifacial panel exclusion from going into effect, and this Court extended the temporary restraining order by 14 days on November 21, 2019.  This Court issued a preliminary injunction on December 5, 2019, prohibiting the withdrawal of the bifacial panel exclusion "until entry of final judgment as to Plaintiffs' claims against Defendants in this case." *Invenergy Renewables LLC v. United States*, 422 F. Supp. 3d 1255, 1295 (Ct. Int'l Trade 2019).

35.     In its opinion accompanying the preliminary injunction order, this Court concluded that Invenergy, as well as other plaintiffs who joined the action, had standing to challenge the withdrawal of the bifacial panel exclusion.  *Id.* at 1271, 1279-80.  This Court then went on to conclude that all four preliminary injunction factors weighed in favor of issuing enjoining the withdrawal.  *Id.* at 1280.  On the issue of likelihood of success, this Court concluded that the plaintiffs had established a fair likelihood of success that USTR violated the notice-and-comment rulemaking requirements of the Administrative Procedure Act ("APA").  *Id.* at 1281-87. This Court also concluded that USTR's decision to withdraw the bifacial panel exclusion was likely arbitrary and capricious.  *Id.* at 1287-88.

34.     Following entry of the preliminary injunction, USTR published a notice in the Federal Register establishing a procedure to consider the withdrawal of the bifacial panel exclusion and inviting comments as to whether USTR "should maintain the exclusion of bifacial solar panels from the safeguard measure, withdraw the exclusion, or take some other action within his authority with respect to this exclusion." *See Procedures To Consider Retention or Withdrawal of the Exclusion of Bifacial Solar Panels From the Safeguard Measure on Solar Products*, 85 Fed. Reg.

4756, 4756 (Jan. 27, 2020).  USTR stated that "[i]f the U.S. Trade Representative determines after receipt of comments pursuant to this notice that it would be appropriate to withdraw the bifacial panel exclusion or take some other action with respect to this exclusion, the U.S. Trade Representative will request that the Court lift the injunction" against withdrawing the exclusion. *Id.*

35.     Following this comment process, USTR published a determination in the Federal Register on April 17, 2020, again stating that the bifacial panel exclusion should be completely withdrawn. *Determination on the Exclusion of Bifacial Solar Panels From the Safeguard Measure on Solar Products*, 85 Fed. Reg. 21,497 (Apr. 17, 2020) (hereinafter, the "April USTR Notice"). The April USTR Notice explained that "the U.S. Trade Representative will request that the U.S. Court of International Trade lift the order preliminarily enjoining the withdrawal from entering into effect." *Id.* at 21,497.  The April USTR Notice failed to cite to or discuss any individual submission that was placed on the record by interested parties.

36.     The Government first moved to lift the preliminary injunction on April 16, 2020, the day before the April USTR Notice was actually published in the Federal Register.  On May 27, 2020, the court issued an opinion denying the Government's motion to dissolve the preliminary injunction, finding that the Government had not proved sufficiently changed circumstances to dissolve the preliminary injunction. *Invenergy Renewables LLC v. United States*, 450 F. Supp. 3d 1347, 1363-64 (Ct. Int'l Trade 2020).  The court also granted the plaintiffs leave to amend their complaints to include a challenge to the April USTR Notice. *Id.* at 1358.

37.     In response to the court's May 27, 2020 opinion, USTR published a notice on June 12, 2020 purporting to rescind USTR's original October 2019 notice withdrawing the bifacial panel exclusion. *Rescission of the October 2019 Withdrawal of the Bifacial Solar Panels*

*Exclusion From the Safeguard Measure on Solar Products*, 85 Fed. Reg. 35,975 (June 12, 2020). On the same day, the Government filed a renewed motion to dissolve the preliminary injunction.

38.     This Court issued an opinion on October 15, 2020, denying the Government's second motion to dissolve the preliminary injunction and granting the plaintiffs' cross-motion to modify the preliminary injunction to explicitly cover the April USTR Notice. *Invenergy Renewables LLC v. United States*, 476 F. Supp. 3d 1323 (Ct. Int'l Trade 2020). The court held that the April USTR Notice was likely arbitrary and capricious, which warranted modification of the preliminary injunction. *Id.* at 1350. The court further held on the merits that USTR's original October 2019 notice violated the APA for the reasons stated in the December 5, 2019 opinion accompanying the preliminary injunction order. *Id.* at 1340. The court therefore vacated USTR's original withdrawal notice. *Id.*

### *The President's Modification Proclamation*

39.     On October 16, 2020, the Modification Proclamation was published in the Federal Register, effective October 25, 2020. 85 Fed. Reg. 65,639, 65,641-42.

40.     The Modification Proclamation had three primary effects.

41.     First, the Modification Proclamation re-imposed Section 201 safeguard duties on bifacial panels, which had previously been subject to an exclusion. *Id.* at 65,640, 65,642.

42.     Second, the Modification Proclamation increased Section 201 safeguard tariffs on imported CSPV panels, including but not limited to bifacial CSPV panels, in year four of the CSPV safeguard measure (February 7, 2021 through February 6, 2022) from 15% to 18%. *Id.* at 65,640. The stated rationale for this tariff increase was that the exclusion of bifacial panels had supposedly impaired the remedial effect of the original safeguard measure. *Id.*

13

43.    Finally, the Modification Proclamation modified the HTS to reflect the re-imposition of Section 201 safeguard duties on bifacial CSPV panels and the increase in the Section 201 duty rate for year four of the CSPV safeguard measure. *Id.* at 65,640-42.

44.    As authority for the action taken in the Modification Proclamation, the President cited section 204(b)(1)(B) of the Trade Act of 1974, 19 U.S.C. § 2254(b)(1)(B), which allows the President to reduce, modify, or terminate Section 201 safeguard measures if he "determines, after a majority of the representatives of the domestic industry submits to the President a petition requesting such reduction, modification or termination on such basis, that the domestic industry has made a positive adjustment to import competition." The President asserted that he had received a petition from the domestic industry, and he found that the domestic industry "has begun to make positive adjustment[s] to import competition." 85 Fed. Reg. at 65,640. The President did not specify which petition he was referring to, and Plaintiffs are not aware of any petition having actually been submitted to the President.

45.    The plaintiffs in the Court No. 19-00192 thus filed motions to supplement their complaints to include challenges to the Modification Proclamation and to modify the existing preliminary injunction to cover the Modification Proclamation. The court issued a temporary restraining order on October 24, 2020, barring the Government from enforcing the Modification Proclamation. *Invenergy Renewables LLC v. United States*, 482 F. Supp. 3d 1344, 1347 (Ct. Int'l Trade 2020). The court extended the temporary restraining order on November 6, 2020. *Id.* In an opinion issued on November 19, 2020, the court denied the motions to supplement the complaints and concluded that any further recourse regarding the Modification Proclamation should be sought through a separate action. *Id.* at 1347-48, 1357-58.

46.     In the November 19, 2020 opinion, the court also lifted the temporary restraining order and denied the motion to modify the preliminary injunction. *Id.* at 1347-48. CBP subsequently issued a bulletin advising that "CBP will begin enforcing the revocation of the [bifacial panel exclusion] on merchandise entered or withdrawn from warehouse for consumption on or after 12:01 a.m. October 25, 2020." U.S. Customs and Border Protection, *CSMS #4500917 – UPDATED GUIDANCE: Temporary Restraining Order on the Modification of Section 201 Action on Solar Cells and Panels Lifted*, https://content.govdelivery.com/accounts/USDHSCBP/bulletins/2aea8d3?reqfrom=share (Nov. 27, 2020).

### *Impact of the Modification Proclamation*

47.     The Modification Proclamation has caused significant economic and business reputational harm to Plaintiffs.  Plaintiffs have paid millions of dollars in additional tariffs as a result of the Modification Proclamation on CSPV panels which are essential to utility-scale solar projects.  Domestic manufacturers can supply only a minor fraction of the projected overall demand for utility-scale solar projects.  The Modification Proclamation will therefore adversely impact the development of clean solar energy in the United States by raising the cost of solar projects and solar energy, contrary to the interests of Plaintiffs.  Fewer solar projects means fewer jobs and fewer homes and businesses being powered by clean, renewable solar energy.

48.     Plaintiffs seek an order that increased Section 201 duties collected from them on CSPV panels which were subject to the increased 18% duty rate, and all duties paid on bifacial solar panels pursuant to the Modification Proclamation to the extent they act as importer of record be refunded, with interest.

*The Court's Nov. 16, 2021 Decision in Court No. 20-03941*

49.     On November 16, 2021, in *Solar Energy Industries Ass'n v. United States*, 553 F. Supp. 3d 1322 (Ct. Int'l Trade2021), *appeal docketed*, No. 22-1392 (Fed. Cir. Jan. 24, 2022), this court considered analogous arguments and allegations to those made in this Complaint.

50.     There, the plaintiffs argued that the Modification Proclamation fails to comply substantively with Section 204(b)(1)(B) of the Trade Act of 1974 because it restricts, rather than liberalizes, trade.  *Id.* at 1340  The court agreed.

51.     In relevant part, the court concluded that, "[b]ecause Section 204(b)(1)(B) permits only trade-liberalizing modifications to existing safeguard measures, the court concludes that Proclamation 10101's withdrawal of the exclusion of bifacial solar panels and increase of the safeguard duties on CSPV panels constituted both a clear misconstruction [of] the statute and action outside the President's delegated authority." *Id.* at 1343.

52.     The Court went on to enjoin the government from enforcing the Modification Proclamation and further ordered the government to refund of all of the plaintiffs' safeguard duties collected pursuant to Proclamation 10101, with interest.  *Id.* at 1343-44.

## STATEMENT OF CLAIMS

53.     In the following respects, the President's Modification Proclamation and its implementation are not in accordance with law.

## COUNT ONE
### (Violation of Section 204 of the Trade Act)

54.     Paragraphs 1 through 53 of this Complaint are hereby incorporated by reference.

55.     A presidential action may be set aside if the President's action involves "'a clear misconstruction of the governing statute, a significant procedural violation, or action outside delegated authority.'" *Silfab Solar, Inc. v. United States*, 892 F.3d 1340, 1346 (Fed. Cir. 2018)

(citation omitted); *Maple Leaf Fish Co. v. United States*, 762 F.2d 86, 89 (Fed. Cir. 1985); *Motions Systems Corp. v. Bush*, 437 F.3d 1356, 1361 (Fed. Cir. 2006) (en banc) (stating that a court may consider whether the President has violated an explicit statutory mandate).  The Declaratory Judgment Act authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).

56.     In modifying the CSPV safeguard measure, President Trump invoked Section 204(b)(1)(B), 19 U.S.C. § 2254(b)(1)(B).  That section provides in relevant part that:

> Action taken under section 2253 of this title [Section 203 of the Trade Act] may be reduced, modified, or terminated by the President if the President . . . determines, after a majority of the representatives of the domestic industry submits to the President a petition requesting such reduction, modification, or termination on such basis, that the domestic industry has made a positive adjustment to import competition.

57.     Section 204(b)(1)(B) authorizes modifications of a safeguard measure in response to an industry petition only if they are trade liberalizing—as indicated by the fact that such modifications can occur only if "the domestic industry has made a positive adjustment to import competition."  Section 601(6) of the Trade Act of 1974 also explains that for purposes of the Act, "[t]he term 'modification', as applied to any duty or other import restriction, includes the elimination of any duty or other import restriction," which indicates that modifications under the Act generally were intended by Congress to be trade liberalizing, rather than trade restricting.  19 U.S.C § 2481(6).

58.     Both changes to the CSPV safeguard measure proclaimed in the Modification Proclamation—(1) the withdrawal of the bifacial panel exclusion; and (2) the increase in the duty rate in year four of the measure—place further restrictions on trade.  The changes to the CSPV safeguard measure were therefore made in violation of the substantive limitations of Section 204

17

of the Trade Act governing modifications of safeguard actions and must be set aside as action involving "a clear misconstruction [of] the statute and action outside the President's delegated authority." *SEIA*, 553 F. Supp. 3d at 1343.

59.     Section 204(b) of the Trade Act of 1974, 19 U.S.C. § 2254(b), also sets procedural requirements that must be followed and requires certain findings to be made by the President before a safeguard action can be modified.  Those prerequisites to Presidential action regarding the petition were not satisfied.

60.     Among other things, President Trump failed to make the finding that is required in order to take action under Section 204(b)(1)(B)—that "the domestic industry *has made* a positive adjustment to import competition."  19 U.S.C. § 2254(b)(1)(B) (emphasis added).  Section 201(b)(1) provides that "a positive adjustment to import competition occurs when (A) the domestic industry (i) is able to compete successfully with imports after actions taken under section 2254 of this title terminate, or (ii) the domestic industry experiences an orderly transfer of resources to other productive pursuits; and (B) dislocated workers in the industry experience an orderly transition to productive pursuits." *Id.* § 2251(b)(1).  President Trump found only that the domestic industry "*has begun to make* positive adjustments to import competition," Modification Proclamation, 85 Fed. Reg. 65,639, 65,640 (Oct. 16, 2020) (emphasis added), which is not a finding that the industry "has made" the adjustment required for action under Section 204(b)(1)(B).

61.     Moreover, President Trump failed to show that "a majority of the representatives of the domestic industry" submitted "a petition requesting such reduction, modification, or termination on such basis." 19 U.S.C. § 2254(b)(1)(B).  The President did not identify the representatives of the domestic industry that he claimed had petitioned for a modification, and the government has not published the claimed petition or otherwise made it available for review.  Upon

information and belief, no petition meeting the criteria of Section 204(b)(1)(B) was submitted to the President prior to his issuance of the Modification Proclamation.

62.     The changes to the CSPV safeguard measure proclaimed in the Modification Proclamation—(1) the withdrawal of the bifacial panel exclusion; and (2) the change in the duty rate in year four of the measure—were therefore made in violation of the procedural requirements of Section 204 of the Trade Act governing modifications of safeguard actions.  The Modification Proclamation must therefore be set aside as action involving "'a clear misconstruction of the governing statute [or] a significant procedural violation.'"  *Silfab*, 892 F.3d at 1346 (citation omitted).

## COUNT TWO
### (Violation of Section 203 of the Trade Act)

63.     Paragraphs 1 through 62 of this Complaint are hereby incorporated by reference.

64.     Section 203(e)(7)(A) of the Trade Act of 1974, 19 U.S.C. § 2253(e)(7)(A), does not permit a safeguard measure to be re-imposed on an article for a period of two years after the prior measure terminated.

65.     The prior action terminated with respect to bifacial CSPV panels in June 2019, when the exclusion for bifacial CSPV panels was granted.  Accordingly, "no new action may be taken" to re-impose a safeguard measure on those panels until June 2021 at the earliest. 19 U.S.C. § (e)(7)(A).

66.     The withdrawal of the exclusion for bifacial CSPV panels in October 2020 results in the imposition of safeguard duties on those panels less than two years after a safeguard measure was terminated with respect to those panels, in violation of Section 203(e)(7)(A) of the Trade Act.

67.     Accordingly, the Modification Proclamation's withdrawal of the exclusion must be set aside as action involving "'a clear misconstruction of the governing statute, a significant

procedural violation, or action outside delegated authority.'" *Silfab*, 892 F.3d at 1346 (citation omitted).

## COUNT THREE
### (Violation of Section 201 of the Trade Act)

68.     Paragraphs 1 through 67 of this Complaint are hereby incorporated by reference.

69.     Section 201(a) of the Trade Act of 1974 provides that "the President, in accordance with this part, shall take all appropriate and feasible action within his power which the President determines will facilitate efforts by the domestic industry to make a positive adjustment to import competition and provide greater economic and social benefits than costs." 19 U.S.C. § 2251(a).  Section 201 does not exclude action taken in accordance with Section 204 from the requirement that the action "provide greater economic and social benefits than costs."

70.     In issuing the Modification Proclamation, President Trump failed to consider and did not make any determination regarding the relative economic and social benefits and costs before modifying the safeguard measure.

71.     President Trump therefore failed to comply with the procedural and substantive requirements of the statute, and the Modification Proclamation must be set aside as action involving "'a clear misconstruction of the governing statute, a significant procedural violation, or action outside delegated authority.'" *Silfab*, 892 F.3d at 1346 (citation omitted).

## <u>DEMAND FOR JUDGMENT AND RELIEF</u>

WHEREFORE, Plaintiffs respectfully request that this Court:

    i.   Issue a declaratory judgment that the Modification Proclamation is unlawful and

        therefore null and void;

    ii.  Order that all increased Section 201 safeguard duties collected directly from Jinko

        due to the Modification Proclamation be refunded, with interest; and

    iii. Provide such further relief as this Court deems just and proper.


August 17, 2022                  Respectfully submitted,

                                   */s/ Richard A. Mojica*
                                   Richard A. Mojica
                                   Mary H. Mikhaeel
                                   MILLER & CHEVALIER CHARTERED
                                   900 Sixteenth Street NW
                                   Washington, D.C. 20006
                                   202-626-5800 (Telephone)
                                   202-626-5801 (Fax)
                                   Email:  rmojica@milchev.com
                                   Email:  mmikhaeel@milchev.com

                                   *Counsel for JinkoSolar (U.S.) Inc. and Jinko Solar*
                                   *(U.S.) Industries Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

Pursuant to U.S. Court of International Trade Rule 4(b) and (h), I hereby certify that on

August 17, 2022, I caused copies of Complaint, Summons, Form 5 Information Statement, and

two Form 13 Disclosure Statements to be served on the following parties by certified mail,

return receipt requested, and by email as indicated:

Attorney-In-Charge
International Trade Field Office
Commercial Litigation Branch
U.S. Department of Justice
26 Federal Plaza, Room 346
New York, NY 10278
Email:  civil.itfoecf@usdoj.gov

Attorney-In-Charge
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530

Scott K. Falk, Chief Counsel
Office of Chief Counsel
U.S. Customs and Border Protection
1300 Pennsylvania Avenue, Suite 4.4-B
Washington, D.C. 20229
Email:  cbpserviceintake@cbp.dhs.gov